UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

EDWIN ANDINO,
        Petitioner,

v.

UNITED STATES OF AMERICA,
        Respondent.

No. 5:19-cr-00001-3
No. 5:22-cv-02138

**O P I N I O N**
Motion to Vacate Sentence, 28 U.S.C. § 2255, ECF No. 245 – Denied and Dismissed

**Joseph F. Leeson, Jr.**                                                                           June 28, 2024
**United States District Judge**

      Petitioner Edwin Andino filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 challenging his conviction for felony drug and firearms charges. Andino argues, first, that counsel was ineffective for failing to seek a dismissal under the Speedy Trial Act and, second, for misinforming him about the sentence he would receive if convicted at trial, which led to his guilty plea. Andino's first claim was previously denied as meritless, and an evidentiary hearing was held on his second claim. The second claim is now denied and dismissed for the reasons set forth below.

**I.      BACKGROUND and FINDINGS OF FACT**

      **A.      Procedural History**

      The background of the case was outlined in the Opinion dated November 30, 2022, which is specifically incorporated herein, and will not be repeated. *See* Opn., ECF No. 254. Of note, Andino was indicted on charges of conspiracy to distribute a mixture and substance containing a detectable amount of fentanyl and of cocaine base ("crack"), said mixture of fentanyl weighing

forty grams or more, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

He pled guilty to these charges at a hearing on July 22, 2020. *See* Notes of Testimony, Change of Plea Hearing, July 22, 2020 ("Plea N.T. __"), ECF No. 247. At the beginning of the hearing, Andino was placed under oath. *Id.* 4:21-5:9. Andino, who communicated fluently in English, testified that he was thirty-seven years old, had a high school diploma, was not on any prescription medication, and had not had any drugs or alcohol in the previous twenty-four (24) hours. *See id.* 5:10 – 6:5. *See also* Notes of Testimony 10:7-13:15, Evidentiary Hearing, April 13, 2023 ("Hrg N.T. __"), ECF No. 261 (Andino reaffirmed that he was not on any drugs at the time of his guilty plea hearing, that he read, wrote, spoke, and understood the English language, and that he answered all of the Court's questions honestly pursuant to his sworn oath.). The Court conducted a thorough colloquy with Andino pursuant to Rule 11 of the Federal Rules of Criminal Procedure. *See generally id.* During this colloquy, the Court advised Andino, *inter alia*, of the maximum "possible" sentences and any mandatory minimum sentences connected with his case, which Andino stated that he understood. *See* Plea N.T. 13:22 – 16:15. The statutory maximum and mandatory minimum sentences that the Court "may" impose were also listed in the written Plea Agreement, which Andino acknowledged under oath that he had read and discussed with counsel before voluntarily signing and that he understood the terms thereof. *See* Plea N.T. 8:12 – 9:11; Plea Agreement ¶ 3, ECF No. 137. During the colloquy, the Court also informed Andino that his sentence would be covered by advisory sentencing guidelines, which the Court was required to calculate and to consider, but was not required to follow. *See* Plea N.T. 18:2-11. Andino stated that he understood this, and that he and counsel had discussed

how the advisory sentencing guidelines might apply to his case. *Id.* Andino attested that no one had promised or offered anything to get him to plead guilty. *Id.* 12:2-4. He responded "Yes" when asked: "Do you understand that no one can guarantee you what sentence you will get from me?" *Id.* 17:16-18. The Court explained that it did not know what sentence it would give because it had not yet received a Presentence Report calculating the guidelines and had not yet had a sentencing hearing. *See id.* 17:20 – 19:2. Additionally, the Court discussed the appellate/collateral attack waiver. Andino stated he understood that by entering into a guilty plea he was "giving up all rights to appeal or collaterally attack [his] conviction sentence or any other matter relating to this prosecution." *Id.* 22:15-18; 23:6-7. The written Plea Agreement also explained the appellate and collateral attack waiver. *See* Plea Agreement ¶ 15. This term of the Plea Agreement was specifically mentioned by Government counsel during the change of plea hearing. *See* Plea N.T. 10:15-24. Andino stated under oath that he understood the summary by Government counsel, understood the terms of the Plea Agreement, and that he agreed with the terms. *Id.* 10:18 – 11:2. The Court found that "the Defendant is fully alert, competent and capable of entering an informed plea, and this plea is a knowing and voluntary plea supported by an independent basis and fact containing each of the essential elements of the offenses to which the Defendant pleaded guilty." *Id.* 28:15-19.

Andino was sentenced on January 27, 2021, to a total term of incarceration of 216 months, followed by a term of five (5) years supervised release. *See* Notes of Testimony, Sentencing Hearing, January 27, 2021, at 23:12-21; 25:12-16 ("Sent. N.T. __"), ECF No. 187.[1]

---

[1] The term of imprisonment consists of 156 months on each of counts one and five, sixty (60) months on count six, and 120 months on count seven. Sent. N.T. 23:12-21; 25:12-16. Andino's five-year term of supervised release consists of five (5) years on each of counts one, five, and six, and three (3) years on count 7, all such terms to run concurrently. *Id.*

This sentence was below the Guidelines range of 262 to 327 months.[2] *Id.* at 6:1-2. It was also below the maximum possible sentence for each count, but at or above any mandatory minimum sentences. *See* Plea N.T. 14:11 – 15:14. Despite the appellate waiver, Andino filed a Notice of Appeal,[3] which was summarily affirmed on January 12, 2022. *See United States v. Andino*, App. No. 21-1346, Order dated January 12, 2022.

On May 31, 2022, Andino filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. *See* Mot. and Mem., ECF No. 245. *See also* Traverse, ECF No. 253. Andino argues that his guilty plea was not knowing and voluntary, and counsel was ineffective for informing him that if he proceeded to trial and lost, he would likely be sentenced to life in prison.[4] *See* Mem. 4-5. Andino contends that he misunderstood the Plea Agreement to state that he was facing a mandatory life imprisonment, not simply a maximum term of life imprisonment. *Id.* Andino alleges that absent counsel's "bad advice" he would have proceeded to trial. *Id.* The Government filed a response to the motion arguing that relief should be denied because the Court conducted a thorough plea colloquy that demonstrates Andino was fully aware of the possible penalties he faced and made a knowing waiver of his right to trial, as well as his right to collaterally attack his conviction. *See* Resp. 5 n.3, ECF No. 249. The Court determined an evidentiary hearing was needed and appointed counsel for Andino. *See* ECF No. 255.

    **B.**    **Evidentiary Hearing**

---

[2] The Court denied Andino's motion for a downward departure, but granted his motion for a downward variance. *See* Sent. N.T. 19:15 – 10:24; 23:8-11; 24:17-18; 28:11-14.
[3] The Government did not file a direct appeal.
[4] The other argument in the Motion was denied by Opinion dated November 30, 2022. *See* Opn. (denying the ineffectiveness claim related to Andino's speedy trial rights because there was no violation of the Speedy Trial Act).

An evidentiary hearing was held on April 13, 2023, at which Andino and trial counsel, Marc Fisher, Esquire, testified.  *See* Notes of Testimony, Evidentiary Hearing, April 13, 2023 ("Hrg N.T. __"), ECF No. 261.  Andino testified as follows: Attorney Fisher informed him that if he went to trial, he was "going to get either life or 851," but he did not understand at the time what 851 meant.[5]  *See* Hrg N.T. 6:16-21, 8:8-12.  Andino did not recall whether Attorney Fisher discussed with him the statutory mandatory terms, and stated that the statutory mandatory terms in the Plea Agreement were not explained to him.  *Id.* 6:22-25, 7:13-18.  Andino signed the Plea Agreement because he thought he was going to receive ten (10) years because that is what Attorney Fisher told him.  *Id.* 7:19 – 8:7.  He would not have pled guilty had he not believed he was facing a mandatory life sentence.  *Id.* 9:3-5.  Andino was unaware that he waived his appellate rights because he did not read or understand the Plea Agreement.  *Id.* 9:8-11.  Andino was also unaware of the mandatory term for the violation of 18 U.S.C. § 924(c)(1) (Possession of a firearm in furtherance of a drug trafficking crime).  *Id.* 9:12-15.

The Court finds this testimony not to be credible for at least three reasons[6].  First, Andino's testimony was inconsistent on the day of the evidentiary hearing.  *See Zahl v. Harper*, 403 F. App'x 729, 731 (3d Cir. 2010) (deferring to the credibility findings of the judge, which discounted the party's "shifting and inconsistent testimony").  For example, Andino first testified that he could not recall whether Attorney Fisher discussed the statutory mandatory terms with him, *id.* 6:22-25, but then testified that he did discuss the statutory terms with Attorney Fisher,

---

[5] Attorney Fisher testified that he explained to Andino the Government had not filed an 851, nor threatened to do so, but if Andino went to trial he would not be surprised if the Government did file an 851, which would expose Andino to double penalties.  *See* Hrg N.T. 23:12-18.

[6] The Court makes this determination after having listened to the testimony of Andino and having viewed his demeanor at both the evidentiary and change of plea hearings.

*id.* 8:2-7. Andino also flip-flopped about whether or not he had read the Plea Agreement. *See id.* 9:9, 11:8-11. Second, Andino's testimony at the evidentiary hearing was inconsistent with and contradictory to his testimony at the change of plea hearing. *See United States v. Eleazer*, No. 12-408-02, 2014 U.S. Dist. LEXIS 41771, at *16-17 (E.D. Pa. Mar. 28, 2014) (finding the defendant's testimony at an evidentiary hearing not to be credible because her habeas "claims and testimony are contradicted by her statements and responses at her change of plea hearing and at sentencing, and by her attorney's credible testimony" about, *inter alia*, the maximum possible penalty, that no one could guarantee what sentence would be imposed, and whether counsel made a sentencing prediction to the defendant). Specifically, Andino offered contradictory testimony about whether he was promised a specific sentence by Attorney Fisher, about whether he knew the statutory mandatory minimum and maximum terms, about whether he had read and understood the Plea Agreement, and about his appellate/collateral attack waiver. Third, Andino's testimony is entirely self-serving. *See Nunez v. AG*, 35 F.4th 134, 142 (3d Cir. 2022) (giving deference to the judge's finding that the party was not credible based on self-serving testimony).

On the other hand, the Court finds the testimony of Attorney Fisher to be credible[7] and it is accepted as fact. Attorney Fisher has been an attorney for more than forty years and has been a criminal defense attorney on the CJA panel since 1985. *See* Hrg N.T. 16:3-14. After being appointed to represent Andino, Attorney Fisher met with him nine (9) times prior to the entry of the guilty plea agreement, and also met with him at the time of the entry of the guilty plea. *Id.* 16:15-23. Attorney Fisher discussed with Andino the charges, the pros and cons of entering a

---

[7] The Court makes this determination after having listened to the testimony of Attorney Fisher and having viewed his demeanor. The Court finds, *inter alia*, that counsel had a good recollection of the events, his account was believable, and his testimony was consistent.

plea versus going to trial, the sentencing guidelines and how they might apply to Andino's case, and the maximum penalties and any mandatory minimum penalties. *Id.* 16:23 – 17:21. They discussed potential maximum sentences and mandatory minimums "several" times because counsel had been negotiating with the Government trying to come up to an agreement. *Id.* 18:17-23. When he received a proposed written plea agreement, Attorney Fisher, because of restrictions due to the Covid-19 pandemic, mailed a copy of the same to Andino and arranged a secure telephone call so they could discuss it. *Id.* 17:22 – 18:10. During their telephonic meeting, Andino acknowledged to Attorney Fisher that he had read the Plea Agreement in its entirety but Attorney Fisher "still read it to him word for word." *Id.* 18:10-13. Attorney Fisher answered all of Andino's questions about the agreement. *Id.* 18:14-16. At this meeting, Attorney Fisher again explained the maximum penalties as well as the mandatory minimums. *Id.* 18:24-25. Attorney Fisher never told Andino that he was facing a mandatory life sentence if he went to trial; rather, he informed Andino that he did not expect Andino would receive life imprisonment by going to trial, but he needed to understand that was the statutory maximum. *Id.* 19:7-10, 24:17-23. He also informed Andino that by going to trial he would likely lose the three points for acceptance of responsibility and stood a greater chance that the judge may not follow the bottom of the guideline range. *Id.* 19:7 – 20:11 Attorney Fisher advised Andino that if he pled guilty, however, there was a possibility he could get a below guideline sentence. *See id.* But Attorney Fisher "explained to him, as [he] did multiple times, [he] can't guarantee what sentence he gets. It's up to the judge." *Id.* 20:12-13. Andino, who Attorney Fisher described as "a very intelligent guy," would ask questions, which Attorney Fisher thought was good because he liked when a defendant was involved in his case. *Id.* 21:13-18. Attorney Fisher "had

absolutely no doubt then, nor [] any doubt now, that [Andino] fully understood the consequences of what he was doing." *Id.* 21:18-20.

Counsel subsequently filed proposed findings of fact and conclusions of law. *See* Gov't FOF, ECF No. 271; Def. FOF, ECF No. 274.[8]

## II. LEGAL STANDARDS

### A. Motion to Vacate under 28 U.S.C. § 2255 – Review of Applicable Law

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal defendants can challenge their convictions or sentences that are allegedly in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack. *Davis v. United States*, 417 U.S. 333, 343 (1974); *O'Kereke v. United States*, 307 F.3d 117, 122-23 (3d Cir. 2002). Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that

---

[8] For the first time in the proposed findings of fact and conclusions of law, Andino's counsel argues that the plea was not knowing and voluntary because Andino did not know about his career offender status. *See* Def. FOF 2-3. However, this argument was not presented in the Motion to Vacate, was not discussed in the Opinion denying the first habeas claim and scheduling an evidentiary hearing, nor was it raised at any time prior to or during the evidentiary hearing. Such claim is therefore barred by the one-year period of limitations. *See* 28 U.S.C. § 2255(f) ("A 1-year period of limitation shall apply to a motion under this section."). It is further precluded by Andino's appellate/collateral attack waiver, which is more fully discussed below. *See United States v. Livsey*, No. 20-2893, 2022 U.S. App. LEXIS 15340, at *3-4 (3d Cir. June 3, 2022) (enforcing the defendant's appellate waiver as to his claim that his plea was not knowing and voluntary because he did not realize he would be sentenced as a career offender). Moreover, the argument lacks merit because the Court had no obligation to inform Andino of his career offender status, but did sufficiently cover during the Rule 11 colloquy Andino's maximum possible sentence, the way the sentencing guidelines work, and the need to await a presentence report calculating the guidelines before knowing what the sentence would be. *See United States v. Adderly*, 218 F. App'x 174, 177-78 (3d Cir. 2007) (rejecting the defendant's complaint that he was not advised before pleading guilty that the career offender guidelines might apply because there is no such requirement and because the district court properly advised the defendant at his plea hearing of how the advisory Sentencing Guidelines work and of the statutory maximum term of imprisonment, and his sentence was within that maximum).

the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255(a)).

"A district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005) (citations omitted)).  But "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon. . . ." 28 U.S.C. § 2255(b).  This involves a two-step inquiry.  First, "the district court must consider[] as true all appellant's nonfrivolous factual claims.  Second, it must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel." *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021) (internal quotations and citations omitted).  To evaluate claims under this second step, the court considers both elements of the *Strickland* [9] test.  *See id.*  "[I]f a nonfrivolous claim does not *conclusively* fail either prong of the *Strickland* test, then a hearing must be held." *Id.*

    B.    **Collateral Attack Waiver – Review of Applicable Law**

Federal defendants can waive their rights to collaterally attack their convictions under § 2255, "provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *See United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008).  "A waiver is

---

[9]    *Strickland v. Washington*, 466 U.S. 668 (1984)

enforceable if it was knowing and voluntary, and enforcing the waiver would not work a miscarriage of justice." *United States v. Laine*, 404 F. App'x 571, 573 (3d Cir. 2010). The reviewing court "strictly construe[s] the language of the waiver, but if [it] find[s] the waiver applies by its terms, it is the defendant's burden to show the waiver should not be enforced." *United States v. Morrison*, 282 F. App'x 169, 171 (3d Cir. 2008).

        **C.**        **Ineffective Assistance of Counsel – Review of Applicable Law**

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). There is a strong presumption that counsel is effective and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. *Id.* at 689 (explaining that courts should not second-guess counsel's assistance"); *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (internal quotations omitted). The court must consider the totality of the evidence, and the burden is on the petitioner. *Strickland*, 466 U.S. at 687, 695.

"A habeas petitioner challenging the voluntary nature of his or her guilty plea faces a heavy burden." *Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994). To satisfy the "prejudice" element in guilty plea cases, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Court may consider information provided in the plea agreement and statements during the oral colloquy as evidence that a guilty plea was both knowing and voluntary. *See Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) ("It is also

well settled that plea agreements are consistent with the requirements of voluntariness and intelligence -- because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange."). Further, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (holding that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings"); *Zilich*, 36 F.3d at 320 ("It can hardly be gainsaid that declarations made under oath ought not to be lightly cast aside.").

### III. ANALYSIS

#### A. Andino waived his appeal/collateral attack rights.

At the change of plea hearing, the Court conducted a thorough Rule 11 colloquy with Andino and ensured that he had read and understood the terms of the Guilty Plea Agreement and the appeal/collateral attack waiver. The waiver was summarized by Government counsel during the change of plea hearing, and Andino stated under oath that he understood the summary by Government counsel, understood the terms of the Plea Agreement, and that he agreed with all the terms therein. *See* Plea N.T. 10:18 – 11:2. The Court found that "the Defendant is fully alert, competent and capable of entering an informed plea, and this plea is a knowing and voluntary plea supported by an independent basis and fact containing each of the essential elements of the offenses to which the Defendant pleaded guilty." *Id.* 28:15-19. The record refutes Andino's contention that he did not know about or understand this waiver.

Moreover, because Andino does not suggest that he is innocent of the charges to which he pled guilty and because he was sentenced below the advisory Guidelines range, enforcing the

waiver will not work a miscarriage of justice. *See Laine*, 404 F. App'x at 573 (holding that enforcing the appellate waiver would not work a miscarriage of justice because the defendant "pleaded guilty and admitted the charges, and the sentence imposed was well below the advisory Guidelines range"). Furthermore, "a waiver does not become[] unenforceable simply because a defendant claims . . . ineffective assistance, but only if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious." *United States v. Akbar*, 181 F. App'x 283, 286-87 (3d Cir. 2006) (internal quotations omitted); *United States v. Filter*, No. 10-902, 2010 U.S. Dist. LEXIS 110946, at *12 (W.D. Pa. Oct. 18, 2010) (holding that "mere allegations of ineffectiveness of counsel will not automatically invalidate a knowing and voluntary waiver of collateral rights" (citing *Mabry*, 536 F.3d at 243)). For the reasons discussed below, counsel was not ineffective. The waiver is therefore enforceable. *See Mabry*, 536 F.3d at 238-39 (enforcing appellate waiver after considering that the written plea agreement clearly applied to both direct appeal and collateral challenge rights and that the defendant signed the agreement, "acknowledging that he understood the terms of the agreement").

Pursuant to the waiver in the signed Guilty Plea Agreement, Andino "voluntarily and expressly waives all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." *See* Plea Agreement ¶ 15. Thus, while the collateral review waiver does not generally bar an ineffectiveness claim, because there is no merit to this claim, the waiver is enforceable, and the habeas petition is dismissed. To the extent this determination is intertwined with the ineffectiveness claim, it is discussed below.

### B. Trial counsel correctly advised Andino in connection with his knowing and voluntary plea.

During the Rule 11 colloquy, Andino testified that he voluntarily signed the Plea Agreement and Acknowledgement of Rights after first reading and discussing the same with counsel. *See* Plea N.T. 8:24 – 9:5. He repeatedly advised the Court under oath that he understood his trial rights and the applicable mandatory minimum and maximum possible sentences. *See, e.g. id.* 6:17-23, 9:6-8, 14:5 – 16:9. Andino also swore that he had not been promised anything to plead guilty, had not been threatened in any way to plead guilty, understood that no one could guarantee him what sentence he would receive, and was pleading guilty voluntarily and of his own free will because he was guilty. *Id.* 12:1-10, 17:17 – 18:1. The Court's thorough Rule 11 colloquy ensured that the plea was knowing and voluntary. Any contradictory arguments or testimony by Andino in connection with the Motion to Vacate are not credible. *See United States v. Byrd*, No. 92-3893, 1992 U.S. Dist. LEXIS 10556, at *2-4 (E.D. Pa. July 17, 1992) (denying the habeas petition, which alleged that the guilty plea was not knowing and voluntary, because the habeas claims were "in direct contravention with the statements he gave under oath in the . . . change of plea proceeding" at which time he "acknowledged that he had freely signed the written plea agreement and denied that anyone had forced him to sign it" and also acknowledged that "he understood the rights he was giving up by pleading guilty").

Attorney Fisher further confirmed that Andino was well-aware of the sentencing possibilities, understood that no one could guarantee what sentence he would receive, and made a knowing decision to plead guilty. *See United States v. Dung Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (holding that "counsel is required to give a defendant enough information to make a

reasonably informed decision whether to accept a plea offer" and that potential sentencing exposure is an important factor in the decision-making process (internal quotation omitted)).

Andino's claim that his plea was involuntary or unknowing based on counsel's bad advice and that counsel was ineffective in this respect is denied.

      **C.**    **There is no basis for the issuance of a certificate of appealability.**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

For the reasons set forth herein, Andino has not made a substantial showing of the denial of a constitutional right, nor would jurists of reason find the Court's assessment debatable or wrong. *See United States v. McManus*, No. 17-2301, 2017 U.S. App. LEXIS 25506, at *1 (3d Cir. 2017) (denying the application for a certificate of appealability because the appellant waived his right to collaterally attack his sentence and jurists of reason would not debate the denial of his § 2255 motion because his "waiver was knowing and voluntary and enforcing it would not work a miscarriage of justice"); *Davies v. Tennis*, No. 09-3461, 2010 U.S. Dist. LEXIS 61449, at *19

(E.D. Pa. Apr. 28, 2010) (refusing to issue a certificate of appealability where the petitioner's habeas claim that his guilty plea resulted from the ineffectiveness of counsel lacked merit).

IV.     **CONCLUSION**

After an evidentiary hearing on Andino's claim that his guilty plea was based on counsel's bad advice regarding the sentence, this Court finds Andino's testimony not to be credible as it was inconsistent and directly contradicted his testimony at the change of plea hearing.  The Court's thorough Rule 11 colloquy at the change of plea hearing ensured that Andino's guilty plea was both knowing and voluntary.  Trial counsel's testimony at the evidentiary further confirms this conclusion.  Because counsel was not ineffective the habeas claim is denied on its merits.  It is also subject to dismissal because Andino waived his collateral attack rights.  The Motion to Vacate is therefore denied and dismissed.

A separate Order follows.

                                                            BY THE COURT:


                                                            */s/ Joseph F. Leeson, Jr.*
                                                            JOSEPH F. LEESON, JR.
                                                            United States District Judge